UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

QUINCY A. WILLIAMS,

               Plaintiff,

v.

                                  Case No. 3:17-cv-959-J-34JRK

MICHAEL DWAYNE GALLOWAY,
et al.,

               Defendants.

_____

**<u>ORDER</u>**

**I. Status**

Plaintiff Quincy A. Williams, an inmate of the Florida penal system, initiated this action on September 15, 2017, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1). In the Complaint, Williams asserts claims pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) Michael Dwayne Galloway; (2) Brittany E. Rogers;[1] (3) Warden G. Drake; (4) Alexander McKenzie;[2] (5) Warden Christopher Hodgson; (6) Lester Fernandez, Inspector General of the Florida Department of Corrections (FDOC); (7) Julie Jones, former FDOC Secretary, in her individual capacity; and (8) Mark S. Inch, FDOC

---

[1] <u>See</u> Order (Doc. 78) at 1 n.1; Plaintiff's Motion (Doc. 61).

[2] Williams identified the John Doe Defendant as Alexander McKenzie. <u>See</u> Plaintiff's Request for Process of Service (Doc. 59); Order (Doc. 60) at 2 n.1. The Court dismissed Williams' claims against Defendant McKenzie on March 25, 2020. <u>See</u> Order (Doc. 92).

Secretary, in his official capacity.[3] Williams asserts that Defendant Galloway violated his First and Eighth Amendment rights when he sprayed Williams with chemical agents and slammed him on the ground on June 1, 2016, as retaliation for Williams complaining about Captain Swain. Additionally, he states that Defendant Rogers used excessive force against him on June 1st. He also asserts that Defendants Jones, Fernandez, Drake, and Hodgson failed to protect him when they knew he feared his life was in danger because he had reported Captain Swain. He requests monetary damages and declaratory relief.

This matter is before the Court on Defendants Inch, Jones, Fernandez, Galloway, Hodgson, Hylda Rogers, and Drake's Motion for Partial Summary Judgment (Motion; Doc. 84) and Defendant Brittany Rogers' Amended Motion for Partial Summary Judgment (Rogers Motion; Doc. 100). They submitted exhibits in support of the Motions. See Def. Exs., Docs. 84-1 through 84-10; 86-1; 100-1.[4] The Court advised Williams of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motions. See Order (Doc. 17); Summary Judgment Notices (Docs. 85, 101). Williams filed responses in opposition to the Motions. See Opposition to Defendants' Motion for Partial Summary Judgment (Response; Doc. 106); Opposition to

---

[3] The Court substituted Mark S. Inch, the current FDOC Secretary, as the proper party Defendant with respect to the official-capacity claim. See Order (Doc. 37). The Clerk made the appropriate entries on the docket to reflect the substitution.

[4] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Defendant's Motion for Partial Summary Judgment (Response II; Doc. 112). Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations

In his verified Complaint,[5] Williams asserts that Captain Swain assaulted him on October 1, 2015, at Columbia Correctional Institution Annex (CCIA). See Complaint at 8. According to Williams, he filed a complaint in federal court,[6] asserting that he feared his life was in danger because Captain Swain and other officers threatened him. See id. Williams states that the Court sent standing orders[7] to notify FDOC officials about Williams' assertions. See id. at 9. He avers that when he attempted suicide, the FDOC transferred him for mental health treatment, but returned him to CCIA "without any protection" in May 2016, at which time the Court sent another standing order to the FDOC.[8] Id. According to Williams, he requested protection when the "transfer bus" delivered him to CCIA, where he was placed in segregated confinement for disobeying

---

[5] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

[6] Williams filed a complaint on January 15, 2016. See Quincy A. Williams v. Shawn Swain and Jason Reeder, Case No. 3:16-cv-45-J-34JRK. The parties reached a settlement on June 11, 2019. See id., Doc. 107.

[7] See Case No. 3:16-cv-45-J-34JRK, Standing Orders to Clerk to Notify Inspector General of the Florida Department of Corrections and Warden of Affected Institution Regarding Inmate Claim of Suicidal Intent or Other Imminent Physical Harm, Docs. 2, 15, 20, 31.

[8] See Case No. 3:16-cv-45-J-34JRK, Standing Order, Doc. 15, filed May 16, 2016.

orders. Id. He states that Lieutenant Stephenson interviewed him, advised him that he was "under protected management," and provided information for the Inspector General's review. Id. He avers that, although he had advised FDOC officers that he needed protection, the FDOC returned him to general population on June 1, 2016.  See id. Williams states that he requested protection that night, when he was placed into a holding cell with three property bags that weighed about fifty pounds. See id. According to Williams, he had stored his property in two tied-together pillowcases (that he carried across his shoulder) and a wrapped-up sheet (that he held with his hands that were restrained behind his back). See id.

Williams states that Defendants Galloway and Rogers (and an unknown sergeant) escorted him at approximately 11:00 p.m. on June 1st. See id. at 10. According to Williams, one officer held his left arm, another held his right arm, and a third officer grasped his shoulder. See id. He states that they told him that the escort formation "was to keep [him] from falling with all []his property." Id. He asserts that, without any warning, Defendant Galloway sprayed him with chemical agents in the face, and Galloway, Rogers, and an unknown officer "dunked" and "slammed" him on the ground. Id. at 10-11. According to Williams, Galloway stated, "this is from Captain Swain[,] keep your mouth closed." Id. at 10. He states that Galloway's use of excessive force was a retaliatory measure because Williams had complained about Captain Swain. See id. at 11. He maintains that Galloway and Rogers "held" him on the ground, as the chemical agents burned his face and eyes and his property bags (wrapped around his neck) choked him. Id. at 10. Williams recounts that, as he gasped for air, Galloway told the cameraman not

4

to turn on the camera until the Captain arrived. See id. According to Williams, Defendants Galloway and Rogers' use of force was unnecessary because he neither argued, resisted, nor disobeyed. See id. He maintains that Galloway wrote two false disciplinary reports and that the report for use of force was overturned for insufficient evidence, and dismissed on rehearing. See id. Williams avers that Defendants Jones, Fernandez, Drake, and Hodgson failed to protect him when they knew that he feared his life was in danger due to his complaints about Captain Swain. See id. at 11-12.

According to Williams, he suffered the following injuries as a result of Defendants Galloway and Rogers' use of excessive force: (1) a dislocated bicep; (2) aggravated back and shoulder injuries; and (3) eye injuries resulting in the need for prescription eyeglasses for distance. See id. at 10. He asserts that he has been treated with pain pills and steroid shots to heal the bicep. See id. He states that the bicep injury has prevented him from exercising, which caused severe weight loss (over fifty pounds) and muscle deterioration. See id. He also maintains that he has had extensive mental health treatment. See id.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rules(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

5

interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[9] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a

---

[9] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Guevara v. NCL (Bahamas) Ltd.</u>, 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted).

## IV. Summary of the Arguments

In the Motions, Defendants maintain that they are entitled to qualified immunity. <u>See</u> Motion at 11-12; Rogers Motion at 9. Additionally, Defendants Inch, Jones, Fernandez, Drake, and Hodgson assert that there are no genuine issues of material fact, and therefore, the Court should grant summary judgment in their favor as to Williams' Eighth Amendment failure-to-protect claims against them. <u>See</u> Motion at 7-9. They also maintain that Williams is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injury resulting from Defendants' acts and/or omissions. <u>See</u> Motion at 9-11; Rogers Motion at 7-9. Additionally, Defendants Fernandez and Jones assert that the Eleventh Amendment bars

Williams' claims for monetary damages against them in their official capacities. <u>See</u>

Motion at 11. In his Responses, Williams maintains that Defendants are not entitled to

summary judgment in their favor because there remain genuine issues of material fact as

to his Eighth Amendment claims against them. <u>See</u> Response at 1-6; Response II at 1-5.

He also asserts that Defendants are not entitled to qualified immunity. <u>See</u> Response at

15; Response II at 7. Additionally, Williams states that his physical injuries resulting from

Defendants' actions and/or omissions are more than <u>de minimis</u>. <u>See</u> Response at 12-

14; Response II at 6-7.

**V. Law**

**A. Eighth Amendment Excessive Use of Force**

With respect to the appropriate analysis in an excessive use of force case, the

Eleventh Circuit has explained.

> [O]ur core inquiry is "whether force was applied in a good faith
> effort to maintain or restore discipline, or maliciously and
> sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1,
> 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining
> whether force was applied maliciously and sadistically, we
> look to five factors: "(1) the extent of injury; (2) the need for
> application of force; (3) the relationship between that need
> and the amount of force used; (4) any efforts made to temper
> the severity of a forceful response; and (5) the extent of the
> threat to the safety of staff and inmates[, as reasonably
> perceived by the responsible officials on the basis of facts
> known to them]. . ." <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1375
> (11th Cir. 1999) (quotations omitted).

<u>McKinney v. Sheriff</u>, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). "When

considering these factors, [courts] 'give a wide range of deference to prison officials acting

to preserve discipline and security, including when considering decisions made at the

8

scene of a disturbance.'" Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (citation omitted). Notably, a lack of serious injury is relevant to the excessive force inquiry. See Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam) (quoting Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curiam)). The United States Supreme Court has explained:

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid.[10] (quoting Whitley,[11] supra, at 321, 106 S.Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. . . . An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id., at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).[12]

---

[10] Hudson, 503 U.S. at 7.

[11] Whitley v. Albers, 475 U.S. 312 (1986).

[12] See Johnson, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Wilkins, 559 U.S. at 37-38.

## B. Eighth Amendment Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). It is "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." Id. at 828 (citations omitted). The deliberate indifference standard requires the plaintiff to demonstrate that the prison official "was subjectively aware" of a risk of harm; mere negligence is insufficient. Id. at 829, 835-36. In a case where the prisoner-plaintiff repeatedly asked to be transferred because he was concerned about a general lack of safety in his cell block, the Eleventh Circuit explained the requirement of deliberate indifference to a substantial risk of harm as follows:

> To establish a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."[13]
>
> **The first element** of deliberate indifference — whether there was a substantial risk of serious harm — is assessed objectively and requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."[14] **The second element** — whether the defendant was deliberately indifferent to that

---

[13] Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016).

[14] Lane, 835 F.3d at 1307.

risk — has both a subjective and an objective component. Subjectively, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference."[15] Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she "knew of ways to reduce the harm" but knowingly or recklessly declined to act.[16] **Finally**, the plaintiff must show a "necessary causal link" between the officer's failure to act reasonably and the plaintiff's injury.[17]

Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (emphasis added); Johnson v.

Bessemer, Ala., City of, 741 F. App'x 694, 698-99 (11th Cir. 2018) (per curiam).

The Eleventh Circuit has explained:

Proof of deliberate indifference requires a great deal more than does proof of negligence: "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Purcell, 400 F.3d at 1319-20 (emphasis supplied) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).[18]

In other words, a plaintiff in [Williams]' position must show not only that there was a substantial risk of serious harm, but also that [Defendants] "subjectively knew of the substantial risk of serious harm and that [they] knowingly or recklessly disregarded that risk." Hale, 50 F.3d at 1583 (alteration omitted) (internal quotation marks omitted).[19] Whether prison officials had the requisite awareness of the

---

[15] Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007).

[16] Rodriguez, 508 F.3d at 620.

[17] Rodriguez, 508 F.3d at 622-23.

[18] Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313 (11th Cir. 2005).

[19] Hale v. Tallapoosa Cty., 50 F.3d 1579 (11th Cir. 1995).

> risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S. Ct. at 1981 (citation omitted). At the same time, the deliberate indifference standard - and the subjective awareness required by it - is far more onerous than normal tort[-]based standards of conduct sounding in negligence: "Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam). And[,] needless to say, to defeat a motion for summary judgment, [a plaintiff] must adduce specific evidence from which a jury could reasonably find in his favor; "[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient." Anderson, 477 U.S. at 252. . . .

Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (emphasis deleted); Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016) (per curiam) (stating that a plaintiff who claims deliberate indifference must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence"); Scott v. Miami Dade Cty., 657 F. App'x 877, 883 (11th Cir. 2016) (stating that "a plaintiff must allege facts that would allow a jury to conclude that: the defendant actually knew that the plaintiff faced a substantial risk of serious harm" (subjective component), and "the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner" (objective component)); Brown v. Hughes, 894 F. 2d 1533, 1537 (11th Cir. 1990) ("The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference.").

Prison officials may avoid Eighth Amendment liability in one of three ways: (1) showing that they were not subjectively aware "of the underlying facts indicating a

sufficiently substantial danger and that they were therefore unaware of a danger"; (2) admitting awareness of "the underlying facts" of a substantial danger, but believing the danger was "insubstantial or nonexistent"; or (3) claiming they responded reasonably to a known substantial danger. Rodriguez, 508 F.3d at 617-18 (quoting Farmer, 511 U.S. at 844) (internal quotations omitted).

## C. Qualified Immunity

The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the

13

performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120-21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017). The Court has instructed:

Because § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation," Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted), each defendant is entitled to an independent qualified immunity analysis as it relates to his or her actions and omissions. So[,] we must be careful to evaluate a given defendant's qualified immunity claim, considering only the actions and omissions in which that particular defendant engaged.

Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018).

## VI. Analysis[20]

### A. Defendant Hylda Rogers

In the Complaint, Williams asserts that Defendant Rogers violated his Eighth Amendment right when she used excessive force against him on June 1, 2016. See Complaint at 2, 10-11. On February 11, 2019, service of process was executed as to Hylda Harley Rogers. See Return of Service (Doc. 34), filed February 19, 2019. On October 23, 2019, Williams notified the Court that Hylda Harley Rogers "was the wrong correctional officer," and that "[t]he correct prison officer is Brittany E. Rogers." Motion to Process of Service (Williams' Motion; Doc. 61) at 2. The Court directed service of process on Brittany E. Rogers, and ordered the Clerk to change the docket to reflect Rogers' proper name. See Order Redirecting Service of Process Upon Defendant Rogers (Doc. 78).On January 15, 2020, service of process was executed as to Brittany E. Rogers. See Return of Service (Doc. 83), filed January 21, 2020.

In the Motion, Defendant Hylda Rogers asserts that she "was not a party to the incident involving [Williams] on June 1, 2016. Motion at 5. In support of her position, she submitted a Declaration. See Def. Ex., Declaration of Hylda Rogers, Doc. 84-2. She states in pertinent part:

> I am employed by the Department of Corrections as a corrections officer.
>
> I have been informed of allegations made by Inmate Quincy Williams in Case No. 3:17-cv-959-J-MMH-JRK.

---

[20] For purposes of summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. Thus, the facts described in the Court's analysis may differ from those that ultimately can be proved.

**I was not involved in or a witness to any use of force with Inmate Williams DC#340902 on June 1, 2016.**

Id. (enumeration omitted and emphasis added). Williams does not oppose Hylda Rogers' assertion that she was not involved in the June 1, 2016 incident. See Response; Response II. As such, Defendants' Motion as to Williams' Eighth Amendment claim against Hylda Rogers is due to be granted.

### B. Eighth Amendment Excessive Use of Force

Williams asserts that Defendants Galloway and Brittany Rogers violated his Eighth Amendment right when they used excessive force upon him on June 1, 2016. Defendants Galloway and Rogers assert that they are entitled to summary judgment as to Williams' Eighth Amendment claims against them. In support of their position, they submitted exhibits, see Docs. 84-1 through 84-10; 86-1; 100-1, including their own Declarations, see Declarations of Michael Galloway (Galloway Decl.), Doc. 84-1; Brittany Rogers (B. Rogers Decl.), Doc. 100-1. In a Declaration, Defendant Galloway describes the circumstances leading up to the June 1, 2016 incident involving Williams. He states in pertinent part:

> On June 1, 2016 at approximately 11:05 p.m., I was assisting Officer McKenzie and Sergeant Brittany Rogers with the escort of Inmate Williams, Quincy dc#340902. Inmate Williams stated that the handcuffs were too tight. Sergeant Rogers checked the handcuffs and informed Inmate Williams that the hand restraints were not too tight. Inmate Williams stated, "the fu[--]ing cuffs are too tight" and attempted to snatch away from me. I ordered Inmate Williams to stop his actions to which he refused and continued his disorderly behavior.

> Officer McKenzie broke the seal (seal #3033006) to MK 4 chemical agent #75 Hip canister and administered a

16

> continuous stream of chemical agents to the facial area of
> Inmate Williams. The chemical agents had the desired effect.
> Inmate Williams complied with all orders given, and all force
> ceased. When the chemical agents took effect, Inmate
> Williams fell to his knees.

Galloway Decl. (enumeration omitted). In a declaration, Brittany Rogers provided a similar

account of what transpired that night. See B. Rogers Decl.; see also Def. Ex., Doc. 84-6

at 3, MINS Incident Report (MINS Report).[21]  According to the MINS Report, the handheld

video footage captured Williams' allegations of staff misconduct as follows: "They beat

me, they slammed me on the ground, and gassed me for no reason, I did not resist, this

is retaliation for a pending lawsuit against Captain Swain. All proper notifications were

made." Def. Ex., Doc. 84-6 at 5 (capitalization omitted); see Doc. 84-7 at 3 (stating the

handheld video footage "does not contain any portion of the force used"); see also Doc.

84-7 at 4 (stating that none of the fixed wing videos show "any portion of the force used").

The use of force report states that Officer McKenzie used chemical agents to overcome

Williams' resistance to a lawful command. See Def. Ex., Report of Force Used (Report),

Doc. 84-6 at 1. According to the Report, McKenzie used chemical agents against Williams

at 11:05 p.m.; Williams was compliant at 11:06 p.m.; Officer Michael Nelson activated the

handheld camera at 11:10 p.m.; and Williams showered at 11:12 p.m., had a medical

evaluation at 11:24 p.m., was issued clean clothing at 11:24 p.m., and was placed in a

secure decontaminated cell at 11:33 p.m. See id.

---

[21] The abbreviation or acronym "MINS" is not defined in the documents provided
to the Court. Apparently, these reports are generated for the use of corrections officials
and the Inspector General's Office after a use of force upon an inmate or a battery upon
a correctional officer by an inmate.

Given the evidence submitted by Defendants Galloway and Rogers, the Court finds that they have met their initial burden of showing, by reference to their Declarations and FDOC incident and use of force reports, that McKenzie used chemical agents to bring Williams into compliance with lawful orders. Thus, Williams is required to present evidence to show that there is a genuine issue for trial. In a Declaration, he states in pertinent part:

> Sergeant Galloway told me go into the hold[ing] cell with my property with me because of count time. After count was over, I was removed from the holding cell with 3 bag[s] of property two tied together pillow case[s] carried across by shou[l]der and the other in a sheet I carr[ied] in my hands behind my back in handcuff[s.] And as we w[ere] walking for no reason at all one of the m[e]n [a] Sergeant sprayed me in the face, and all three of them slam[med] me to the ground and Sergeant Galloway sprayed again in the face and said this [is] from Captain Swain, keep your mouth close[d]. [M]y eyes w[ere] burning and I was choking from the gas and the pillow cases wrap[ped] around my neck. The[n] Sergeant Galloway told the cameraman not to start the recording yet[,] wait on the Captain and he had his knee press[ed] hard into my upper back. After removing the two pillow[]s from around my neck[,] he allow[ed] the cameraman to start[] recording. [I]nstead of medical[,] I was t[a]ken directly to confinement and put into the shower. I explain[ed] to the Captain on [the] recorder that I was being retaliated against for reporting w[hat] Captain Swain had done to me.
>
> . . . .
>
> I never resist[ed] any order giv[en] to me. Nor did I pull from the officer holding me. I never said that I had any type of problems with the handcuffs. I was only trying to carry my property.

P. Exs., Declaration of Quincy Williams (Williams Decl.), Doc. 106-1 at 3-5; see Declaration of Quincy Williams (Williams Decl. II), Doc. 112-3 at 2-7.

Given the differences in Williams' and Defendants Galloway's and Rogers' sworn recollections, there remain genuine issues of material fact as to whether Galloway and Rogers used excessive force upon Williams. As such, Defendants' Motions as to Williams' Eighth Amendment claims against Defendants Galloway and Rogers are due to be denied.

### C. Eighth Amendment Failure to Protect

Williams also asserts that Defendants Jones, Fernandez, Drake, and Hodgson failed to protect him when they knew he feared his life was in danger because he had reported Captain Swain. Defendants Jones (and Inch), Fernandez, Drake, and Hodgson assert that they are entitled to summary judgment as to Williams' Eighth Amendment failure-to-protect claims against them. In support of their position, they submitted exhibits, see Def. Exs., including the Declarations of Warden Drake (Drake Decl.), Doc. 86-1; Warden Hodgson (Hodgson Decl.), Doc. 84-4; and Lester Fernandez (Fernandez Decl.), Doc. 84-5.

Defendant Fernandez asserts that he was not employed at the Inspector General's Office on June 1, 2016, when the incident involving Williams occurred. See Motion at 4-5, 8. In his Declaration, he states in pertinent part:

> I am employed by the State of Florida as Inspector General for the Florida Department of Corrections.
>
> **I was employed in the Inspector General's Office beginning June 6, 2016.**
>
> I have reviewed the Complaint and allegations made by Inmate Quincy Williams in Case No.[] 3:17-CV-959-MMH-JRK. The events of this time occurred as follows[.]

19

> During this period of time, I did not investigate a complaint by an inmate named Inmate Quincy Williams, DC #340902. Nor was I informed that Inmate Williams complained that he was afraid for his life due to a Sergeant Swain.

Fernandez Decl. (enumeration omitted and emphasis added). Defendant Fernandez maintains that he started his employment with the Inspector General's Office on June 6, 2016, and therefore is entitled to summary judgment in his favor. See Motion at 8. Williams fails to contest this assertion. Thus, Defendants' Motion as to Williams' Eighth Amendment failure-to-protect claim against Fernandez is due to be granted.

Next, Defendant Hodgson maintains that he was not employed at Columbia Correctional Institution on June 1, 2016, when the incident involving Williams happened. See Motion at 5, 8. In a Declaration, he states in pertinent part:

> **I was a Warden at Jefferson Correctional Institution from June 1, 2016 to June 30, 2016.**
>
> I have been informed of allegations made by Inmate Quincy Williams in Case No. 3:17[-]cv-959-MMH-JRK. I have not had contact with this inmate to my knowledge and was not aware of the fact that this inmate alleged fear of any employee at Columbia Annex in June of 2016.
>
> **I would have been unaware of anything relating to Inmate Williams and Captain Swain prior to my arrival at Columbia Correctional Institution in July 2016.**

Hodgson Decl. (enumeration omitted and emphasis added). Defendant Hodgson maintains that he is entitled to summary judgment in his favor because he arrived at Columbia Correctional Institution in July 2016. See id. Williams fails to contest this assertion. Thus, Defendants' Motion as to Williams' Eighth Amendment failure-to-protect claim against Hodgson is due to be granted.

20

Defendant Drake maintains that Williams cannot prove that he knew of and disregarded an excessive risk to Williams' health or safety. See Motion at 5, 8. In a Declaration, Drake states in pertinent part:

> I was the Warden at Columbia Correctional in June of 2016.
>
> I have been informed of allegations made by Inmate Quincy Williams in Case No. 3:17-cv-959-MMH-JRK. I have not had contact with this inmate to my knowledge and was not aware of that [sic] the fact that this inmate alleged fear of any employee at this institution.
>
> I was not aware that Inmate Williams was in fear of his life and was being threatened for reporting Captain Swain for allegedly assaulting him. Nor was I aware that Inmate Williams was assaulted because he reported Captain Swain. It is my understanding that force was used against this inmate for failing to obey a lawful order.

Drake Decl. (enumeration omitted).

In his Response, Williams maintains that Drake knew he feared his life was in danger because he had reported Captain Swain. See Response at 7-9. He states that Drake had reviewed the use of force video footage showing Captain Swain's assault on him, and that Williams had sent several grievances "letting [Drake] know" about Captain Swain's threats. Id. at 7 (citing P. Ex. C, Grievances, Doc. 106-3 at 3, 6, 12, dated May 10th, 12th, 29th, 2016). Additionally, Williams maintains that the Court sent Drake three "standing notices" in Case No. 3:16-cv-45-J-34JRK, Docs. 15, 20, 31, notifying Drake that Williams feared his life was in danger. Id.; Williams Decl. II at 3 (stating the standing orders notified the Warden, Inspector General, and Secretary "about what was happening to [Williams]"). In his Declaration, Williams describes the circumstances leading up to the June 1, 2016 incident. He states in pertinent part:

On October 1, 2015, while housed at Columbia Correctional Institution Annex I was sexually and physically assaulted by Captain Swain which result[ed] in several suicide attempt[s] and inpatient mental treatment. D[ur]ing these time[s] I requested protection at these other institution[s] which approved the grievance and forwarded to the Inspector General also on several differen[t] incidents. The Honorable Court sent notices too due to fact I was being harass[ed] and threaten[ed] for reporting Captain Swain. I cut my neck and arm and went to extensive treatment at South Florida Reception Center. I file[d] [a] request for protection there also, and was advised that I would return after being discharged from mental health.

[I]n May 2016[,] I return[ed] back to Columbia C.I. Annex without any protection status. I immediately request[ed] … protect[ion] right off the bus and resulted in be[ing] place[d] in segregated confinement for disobeying [an] order[.] False D.R. written saying I refused to go to my cell**. I again notified the courts who notified the institutional Warden Drake who order[ed] the confinement lieutenant [to] interview me concerning the court's notice. I advised him of the issue I was having and had with Swain and told him I was in fear [h]e was going to have someone kill me. He said he was sending the information to the Inspector General and that I would remain in confinement until the investigation was complete and less than a week I was order[ed] to be released back into open population S-dorm. I ask[ed] to see the Lieutenant who was not available at that time[.]** So to keep from getting another false D.R. write up[,] I went to the dorm when the shift change[d] that night. Later I request[ed] … protection that I was in fear for my life.

Williams Decl. at 2-3 (emphasis added). In his Complaint, Williams asserts that Lieutenant Stephenson interviewed him about his assertions (that had prompted the Court to send its May 2016 standing order), advised him that he was "under protected management," and provided information for the Inspector General's review. Complaint at 9. Taking Williams' assertions as true, Drake neither responded to Williams' assertions in an

unreasonable manner nor knowingly or recklessly disregarded an excessive risk to Williams' health or safety. As such, Defendants' Motion is due to be granted as to Williams' Eighth Amendment failure-to-protect claim against Drake.

Additionally, Defendants Jones and Inch maintain that Williams cannot prove that they knew of and disregarded an excessive risk to Williams' health or safety. See Motion at 5, 8.[22] In his Declaration, Williams states that the "Secretary" knew he feared his life was in danger because the Court sent "several standing orders" in Case No. 3:16-cv-45-J-34JRK. Williams Decl. II at 3. Notably, the Clerk sent the May 16, 2016 standing order to the Inspector General's Office (Interim Inspector General Sumpter) and Warden Drake, not the FDOC Secretary's Office. See Case No. 3:16-cv-45-J-34JRK, "Standing Order to Clerk to Notify Inspector General of the Florida Department of Corrections and Warden of Affected Institution Regarding Inmate Claim of Suicidal Intent or Other Imminent Physical Harm," Doc.15, filed May 16, 2016. Additionally, Defendant Inch was appointed to serve as the FDOC Secretary in January 2019, and therefore was not in a position where he could have known about Williams' concerns relating to Captain Swain in 2016. See http://dc.state.fl.us/secretary.html; Order (Doc. 37); Motion to Substitute (Doc. 33).

---

[22] Williams sued Julie Jones, as FDOC Secretary in her individual and official capacities, asserting that she violated his Eighth Amendment right when she failed to protect him. See Complaint at 3, 11. The Court substituted Mark Inch, the current FDOC Secretary, as the proper party Defendant, with respect to the official-capacity claim. See Order (Doc. 37) (citing Federal Rule of Civil Procedure 25(d)(1)).

As such, Defendants' Motion as to Williams' Eighth Amendment failure-to-protect claims against Defendants Jones and Inch are due to be granted.[23]

### D. Qualified Immunity

Defendants assert that they are entitled to qualified immunity because they did not commit any federal statutory or constitutional violation. See Motion at 11-12; Rogers Motion at 9. Under the doctrine of qualified immunity, Defendants may claim they are entitled to qualified immunity from monetary damages in their individual capacities. It is undisputed that Defendants were engaged in discretionary functions during the events at issue. To defeat qualified immunity with respect to these Defendants, Williams must show both that Defendants committed a constitutional violation, and that the constitutional right violated was clearly established. As the Eleventh Circuit has instructed, in determining the applicability of qualified immunity, the Court must "parse" the actions each Defendant undertook, and "address the evidence as it pertains solely to him [or her]." Alcocer, 906 F.3d at 952.

Upon review, Defendants Fernandez, Hodgson, Drake, and Jones are entitled to qualified immunity from monetary damages in their individual capacities as to Williams' Eighth Amendment failure-to-protect claims against them. As to Williams' Eighth Amendment excessive-use-of-force claims against Defendants Galloway and Brittany

---

[23] The Court need not address Defendants Fernandez and Jones' assertion that the Eleventh Amendment bars Williams' claims for monetary damages against them in their official capacities. See Motion at 11; see also Complaint at 3.

Rogers, they are not entitled to qualified immunity. As such, Defendants' Motions as to their assertion of qualified immunity are due to be granted in part and denied in part.

### E. Physical Injury Requirement
### 42 U.S.C. § 1997e(e)

Next, the Court turns to Defendants' assertion that Williams is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injuries that are more than de minimis, resulting from Defendants' acts and/or omissions. See Motion at 9-11; Rogers Motion at 7-9. In support of their position, Defendants submitted Williams' Inmate Sick-Call Request (Request), dated June 5, 2016. See Def. Ex., 84-10 at 1. In the Request, Williams complained about a pulled muscle, back pain, right eye and neck soreness, and blurred vision. See id. Williams stated that the back pain was "ongoing," but the other problems started June 1, 2016. Id.

In Brooks v. Warden, 800 F.3d 1295 (11th Cir. 2015), the Eleventh Circuit Court of Appeals addressed the availability of compensatory and punitive damages as well as nominal damages in suits brought by prisoners under § 1983. The Eleventh Circuit stated:

> [Plaintiff]'s claim, however, is further governed by the Prison Litigation Reform Act of 1995 [(PLRA)], Pub.L. No. 104–134, §§ 802–10, 110 Stat. 1321, 1366–77 (1996). The PLRA places substantial restrictions on the judicial relief that prisoners can seek, with the goal of "reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Al–Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011) (quoting Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002)). The section of the Act at issue here, 42 U.S.C. § 1997e(e), reads this way:

25

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act....

This Court has held that § 1997e(e) applies to all federal civil actions, including constitutional claims brought under § 1983. See Harris v. Garner (Harris II), 216 F.3d 970, 984–85 (11th Cir. 2000) (en banc)....

In this case, [Plaintiff] did not allege any physical injury . . . . Nevertheless, he sought "compensatory . . . punitive, and nominal damages" from [Defendant]. **Under the statute and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury.** See Al-Amin, 637 F.3d at 1198 (punitive); Harris v. Garner (Harris I), 190 F.3d 1279, 1286 (11th Cir. 1999) (compensatory), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part, 216 F.3d 970. However, we have never had the opportunity in a published opinion to settle the availability of nominal damages under the PLRA. We do today, and we hold that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury.

Brooks, 800 F.3d at 1307-08 (emphasis added).

To satisfy § 1997e(e), a prisoner must assert physical injury that is more than de minimis, but the injury does not need to be significant. See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted); Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007). Despite § 1997e(e)'s limitation, successful constitutional claimants who lack a physical injury may still recover nominal damages. See Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual

injury sufficient to entitle him to compensatory damages."). Further, the Eleventh Circuit has instructed courts to dismiss an inmate's compensatory and punitive damages claims under § 1997e(e) without prejudice to allow an inmate to refile when and if the inmate is released. See Harris v. Garner, 216 F.3d 970, 980 (11th Cir. 2000).

Here, Williams asserts physical injuries that are greater than de minimis. The injuries Williams complains about are allegedly the result of Defendants Galloway and Rogers' use of excessive force. See Response at 12-14; Response II at 6-7. He describes injuries of the type for which a free world person would seek professional medical care as opposed to home treatments. See id. In a Declaration, he states in pertinent part:

> I was seen by [an] unknown male nurse who said he will put me in to see mental health and wash your eye out and never examin[ed] me. My eyes w[ere] still hurting and I had blurred vision for several week[s]. I we[nt] to sick call[,] had to be treated for worsening my back injury and eyes which I was order[ed eye drops and put in to see the doctor. Also[,] my bice[p] was pulled, dislocated and swollen[.] I could not use[] that arm at all for weeks, because I was unable to workout (exercise). Body los[t] weight and muscle mass, my shoulder was injur[]ed also. I was taking pain pills and was order[ed] a steroid shot to help heal my bicep injury a year later for this injury and also advised that my arm will not fully heal without reconstructive surgery or [I] may re[-]rupture my arm again. I'm unable to even do push up[s] or any kind of muscle building exercise with that arm, which resulted from carrying all that property and being slam[med] down.

Williams Decl. at 4-5; see Williams Decl. II at 6-7; see also Complaint at 10, ¶¶ 25-26.

Williams' alleged injuries, described as eye injuries, aggravated back and shoulder injuries, and a dislocated bicep leading to months of medical treatment, cross § 1997e(e)'s de minimis threshold. See Thompson, 551 F. App'x at 557 n.3 (describing an approach of asking whether the injury would require a free world person to visit an

emergency room or doctor) (citing <u>Luong v. Hatt</u>, 979 F. Supp. 481, 486 (N.D. Tex. 1997) ("A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.")). Thus, Defendants' Motions are due to be denied to the extent that the Court finds Williams' request for compensatory and punitive damages is not precluded under § 1997e(e) because he alleges that he suffered physical injuries that are greater than <u>de minimis</u>.

In consideration of the foregoing, it is now

**ORDERED**:

1.     Defendants Inch, Jones, Fernandez, Galloway, Hodgson, Hylda Rogers, and Drake's Motion for Partial Summary Judgment (Doc. 84) is **GRANTED** as to: (1) Williams' Eighth Amendment excessive-use-of-force claim against Hylda Rogers; (2) Williams' Eighth Amendment failure-to-protect claims against Julie Jones, Mark Inch, Lester Fernandez, Christopher Hodgson, and G. Drake; and (3) Defendants Fernandez, Hodgson, Drake, Hylda Rogers, and Jones' assertions of qualified immunity as to Williams' Eighth Amendment claims against them. Otherwise, the Motion is **DENIED**.

2.     Defendant Brittany Rogers' Amended Motion for Partial Summary Judgment (Doc. 100) is **DENIED**.

3.     The Clerk shall enter judgment in favor of Defendants Hylda Rogers, Julie Jones, Lester Fernandez, Christopher Hodgson, and G. Drake and make the appropriate notations on the docket.

28

4.    The parties must confer in good faith to discuss the issues and the possibility of settlement as to Williams' remaining claims.[24] **No later than August 25, 2020**, the parties must notify the Court whether they are able to reach a settlement. If the parties are unable to settle the case privately among themselves, they must notify the Court if they wish to have the case referred to a United States Magistrate Judge for a settlement conference. Otherwise, the Court will enter a case management order, set a trial date, and direct the parties to begin trial preparations.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of July, 2020.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

sc 6/25
c:
Quincy A. Williams, FDOC #340902
Counsel of Record

---

[24] The remaining claims are Williams': (1) First and Eighth Amendment claims against Defendant Galloway; (2) Eighth Amendment claim against Defendant Brittany Rogers; and (3) request for declaratory relief against Defendant Inch.

29